**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

THOMAS AND COLLEEN MEYERS,

      Plaintiffs,

         v.

PROTECTIVE INSURANCE
COMPANY

      Defendant.

CIVIL ACTION NO. 3:16-CV-01821

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is a motion to dismiss (Doc. 3) Plaintiffs Thomas and Colleen Meyers' (collectively "Plaintiffs") Complaint (Doc. 1) filed by Defendant Protective Insurance Company ("Defendant"). Plaintiffs contend that Defendant insurance company failed to timely, objectively, and fairly evaluate Plaintiffs' insurance claims, and, as such, failed to comply with the statutory and common law duties of good faith and fair dealing in handling Plaintiffs' claims. For the reasons that follow, Defendant's motion to dismiss the Complaint will be granted in part and denied in part. All references to fiduciary duties are to be stricken from the Complaint. Plaintiffs' bad faith claims are dismissed without prejudice. However, Plaintiffs will be permitted to proceed on their derivative loss of consortium claim.

### I. Factual Background

The facts, as set forth in Plaintiffs' Complaint (Doc. 1), are as follows:

On January 21, 2014, Plaintiff Thomas Meyers, was delivering boxes for his employer, KM Michaels, Inc., when he was struck by a hit-and-run vehicle. Plaintiff claims that he sustained the following injuries:

> concussion and post-concussion syndrome; including blurred vision; tinnitus; vertigo; memory loss; nausea; vomiting; headaches; seeing light and dark dots; irritability; moodiness; sleeping problems; hearing loss in his right ear; right rotator cuff tear with tendinosis of the supraspinatus tendon and biceps tenosynovitis; peripheral nerve damage bilateral upper extremities, confirmed via EMG; exacerbation of spinal and disc problems; C5 radiculopathy, more so on the right, radiating down into his fingers; and L4-5 disc protrusion.

The Complaint alleges that, on April 23, 2014, Plaintiff provided notice to Defendant, Protective Insurance Company, of his uninsured motorist claim. Nearly two years later, Plaintiff advised Defendant that he had been unable to identify the driver of the vehicle who struck him, and that he would continue his pursuit of his uninsured motorist claim absent any information regarding the hit-and-run driver.

On February 1, 2016, Plaintiff provided Defendant with a detailed liability and damages package, including hundreds of pages of Plaintiff's medical records. There, Plaintiff submitted a lien for medical expenses and wage loss in excess of $122,000. This package went without a response for "many months." On March 9, 2016, Plaintiffs requested that Defendant advise of the status of Defendant's insurance claim review. Defendant failed to provide any such status. On March 31, 2016, Plaintiff again wrote to Defendant requesting the status of Defendant's evaluation, as none had previously been forthcoming, but this correspondence, again, went without the courtesy of a response.

On April 18, 2016, Plaintiff provided a blanket authorization for Defendant to obtain certain investigative records that Defendant desired, and requested a copy of all records pursuant to that authorization, which Defendant provided a month later. During this time, Plaintiff alleges, despite requests on March 9, 2016, March 31, 2016, April 20, 2016, and April 21, 2016, Defendant continuously failed to advise Plaintiff of the status of the investigation and evaluation.

On May 26, 2016, Defendant offered Plaintiff $225,000 to settle the claim. According to Plaintiff, this amount was unreasonable and not in consideration of Plaintiff's alleged damages, including a growing $122,000 medical lien, past and future pain and suffering, as well as the fact that Plaintiff was unable to work. Within a week, Defendant increased its offer, which, according to Plaintiff, again failed to account for Plaintiffs' claim for past and future lost wages, future pain and suffering, and past and future medical expenses, "all of

which spoke to a verdict potential far in excess of Defendant's policy limits", which are $1 million. On June 9, 2016, however, Plaintiffs advised "that they would be willing to settle Plaintiffs' claims within the policy limits."

Meanwhile, Defendant retained the services of attorney Nigel A. Greene to represent its interests in the matter. Upon his retention, Mr. Greene indicated to Plaintiffs' counsel that he would require additional time to review the claim. Mr. Greene immediately requested a medical evaluation, and, within a month, allegedly requested three more medical evaluations of Plaintiff.

The Complaint further alleges that, on June 15, 2016, Mr. Greene "wrote to Plaintiffs spewing out several falsities designed solely to devalue Plaintiffs' claims, including that there was a 'delay in reporting the accident'; that Plaintiff has significant 'medical history'; that there was only 'minor property damage'; and that there were 'other relevant factors.'"

In light of the foregoing, on July 25, 2016, Plaintiffs Thomas and Colleen Meyers filed the instant Complaint sounding in breach of contract, common law bad faith, statutory bad faith, and loss of consortium, alleging that Defendant acted in bad faith for the following reasons:

> a. Failing to timely pay Plaintiff's valid uninsured motorist claim;
> b. Failing to timely and properly investigate Plaintiff's valid uninsured motorist claim;
> c. Failing to timely cooperate with and respond to Plaintiff's authorized representatives about Plaintiff's claim;
> d. Failing to properly and fairly negotiate Plaintiff's claim with Plaintiff's authorized representatives;
> e. Failing to have a proper factual and legal basis for its alleged ongoing investigation;
> f. Failing to timely schedule the so-called "review meeting" for the claim;
> g. Failing to timely evaluate Plaintiff's claim despite receiving a blanket authorization for Plaintiff's records;
> h. Failing to communicate with Plaintiff the status of Defendant's ongoing investigation and reasonable explanation for the delay, despite Plaintiff's requests for same;
> i. Purposely misleading Plaintiff to believe a reasonable settlement offer would be forthcoming even though it was not;
> j. Ignoring communication requests and requests for information from Plaintiff and Plaintiff's authorized representatives;
> k. Refusing to agree to reasonably pay Plaintiff's valid uninsured motorist

claim without any factual or legal basis for such refusal;

l. Elevating Defendant's financial interests and considerations over the interests of their insured;

m. Failing to comply with the provisions of the Unfair Insurance Practices Act and accompanying regulations;

n. Failing to comply with the provisions of the Unfair Claims Practices Settlement Act;

o. Failing to act promptly upon written or oral communications with respect to claims arising under the policy;

p. Failing to adopt and implement reasonable standards for prompt investigation of claims;

q. Refusing to pay Plaintiff's claim without conducting a reasonable investigation based upon all available information;

r. Refusing to attempt in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's claims even after Defendant's liability under the policy has become reasonably clear;

s. Compelling Plaintiff to institute litigation to recover amounts due under the policy by failing to make a reasonable settlement offer;

t. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the fact or applicable law for the failure to make a[n] offer of a compromise settlement;

u. Acting recklessly, negligently and/or unreasonably in the handling, investigation, and evaluation of Plaintiff's claim;

v. Failing to fulfill its fiduciary responsibilities to its insured;

w. Failing to act in good faith and with fair dealing towards its insured;

x. Failing to act with due care and diligence in the investigation, evaluation and handling of the Plaintiff's claim;

y. Failing to fulfill its fiduciary, common law and contractual duties to its insured;

z. Acting recklessly, negligently and/or unreasonably under the circumstances;

aa. Being less than forthright and honest in its dealings with its insured;

bb. Refusing to make a fair and reasonable settlement offer, in light of Plaintiffs' damages, including hearing loss, post-concussion syndrome, and rotator cuff tear requiring surgical intervention, among other significant injuries, a significant past and future medical and wage loss claim and verdict potential well in-excess of Defendant's policy limits;

cc. Refusing to negotiate with Plaintiff in food faith despite Plaintiff's representations and willingness to settle Plaintiffs' claim for an amount within the policy limits;

dd. Unreasonably requesting four medical evaluations of Plaintiff by four different physicians;

ee. Unreasonably delaying its requests for medical examinations; ff. Arbitrarily indicating that it could not reasonably evaluate the claim absent further medical evaluations, even after Defendant already had the opportunity to evaluate Plaintiff by a physician of its own choosing;

gg. Retaining counsel for the sole purpose of devaluing and/or undermining Plaintiff's claims;

hh. Unreasonably requesting three medical evaluations of Plaintiff, to take place all within one-month span, by three different physicians;

ii. Failing to disclose to Plaintiff the reasons behind its refusal to properly evaluate Plaintiff's claims, stating only "other relevant factors" without indicating what are such other relevant factors; and

jj. Refusing to properly evaluate Plaintiff's claims based on alleged insignificant "property damage," yet withholding all pictures and/or repair

4

estimates regarding said property damage. [and]
kk. Purposefully withholding reasonable compensation in order to make Plaintiff desperate to accept less than the full value of his claim, knowing of Plaintiff's financial hardships, injuries and disability.

The Complaint contains the following claims: (1) Count I alleging breach of contract, including common-law bad faith; (2) Count II alleging statutory bad faith; and (3) Count III alleging loss of consortium by Colleen Meyers.

Defendant has moved to dismiss all claims of "fiduciary duty," all claims of bad faith, and the claim for loss of consortium. (Doc. 3). Oral argument on this motion was heard on January 11, 2017. The motion has been fully briefed and is now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to

5

relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are

based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## III. Discussion

### A.     References to Fiduciary Duty

Plaintiffs allege in the Complaint that Defendant "acted in a fiduciary capacity," owed Plaintiffs "a fiduciary duty" and failed to fulfill its "fiduciary duties [and] responsibilities." (*See, e.g.*, Doc. 1-1, at ¶ 58, 59, 60, 71, 74). The Complaint, however, does not allege a count for a breach of fiduciary duty, nor do Plaintiffs intend to seek damages predicated on a breach of fiduciary duty theory. (Doc. 7, at 18). Rather, the Complaint raises claims for breach of contract (including common law bad faith), statutory bad faith, and loss of consortium. Nevertheless, throughout the Complaint, Plaintiffs allege that Defendant owed them a fiduciary duty. In its motion to dismiss, Defendant argues that all references to a fiduciary duty must be stricken from the Complaint. (Doc. 4, at 9). I agree.

Under Pennsylvania law, an insurer owes a duty of good faith and fair dealing toward their insureds. It is well-established, however, that there is no fiduciary duty owed to an insured in the context of an underinsured/uninsured motorist benefits. *See, e.g., Condio v. Erie Ins. Exch.*, 2006 PA Super 92, 899 A.2d 1136, 2006 Pa.Super.LEXIS 611 (2009). Plaintiffs concede as much. (Doc. 7, at 19). They argue, however, that removing all references to a fiduciary duty in the Complaint is a drastic remedy. (*Id.*) They claim that, even if an insurer does not owe an insured a fiduciary duty in an uninsured motorist context, for purposes of dismissal, courts distinguish between references to a fiduciary duty in a bad

7

faith count and a standalone breach of fiduciary duty claim: a standalone breach of fiduciary duty claim against an insurance carrier cannot survive a motion to dismiss, but references to a fiduciary duty in a statutory bad faith or breach of contract claim can. In support, Plaintiffs cite two cases, *Tubman v. USAA Cas. Ins. Co.*, 943 F.Supp.2d 525, 531 (E.D.Pa.2013) and *Tippett v. Ameriprise Ins. Co.*, No. 14-4710, 2015 WL 1345442, at *4 (E.D.Pa. Mar. 25, 2015), which dismissed a standalone breach of fiduciary duty claim against an insurer, but denied the insurer's motion to strike other references to fiduciary duty in the complaint.

Plaintiffs further assert that "there is ... no proper basis to strike the references to fiduciary duty in the Complaint." (Doc. 7, at 19). When asked at oral argument to elaborate on the reasoning behind that assertion, counsel for Plaintiffs merely deferred to the reasoning in the two above-cited cases. However, those two cases, *Tubman* and *Tippett*, also do not elaborate on why references to fiduciary duty are proper in a complaint that does not otherwise allege a fiduciary duty breach. *Tippet* merely cites to *Tubman* without any analysis, 2015 WL 1345442, at *7, and *Tubman*'s entire analysis amounts to a citation that generally "striking a pleading is a 'drastic remedy' to be used sparingly." 943 F. Supp. 2d at 531 (citation omitted). I find that unpersuasive.

A citation that cautions against striking a pleading, as the one invoked by *Tubman*, cannot be used to caution against striking immaterial references in a pleading, as *Tubman* regrettably did. As such, *Tubman*'s denial of the insurer's motion to strike references to fiduciary duty in the complaint finds no support in caselaw. Rather, the situation is akin to a motion to strike under Federal Rule of Civil Procedure 12(f), which is "not favored and usually will be denied unless the allegations have no possible relation to the controversy." *River Road Devel. Corp. v. Carlson Corp.*, 1990 WL 69085 at *2 (E.D.Pa., May 23, 1990) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure at 1382 (1969)). Such is the

case here. It is well-established that, under Pennsylvania law, Defendant does not owe any fiduciary duties to Plaintiffs in the context of an uninsured motorist claim. *Bare v. State Auto Grp.*, 2013 WL 3878606, at *1 (E.D. Pa. July 26, 2013); *see also Bukofski v. USAA Cas. Ins. Co.*, 2009 WL 1609402, at *5 (M.D. Pa. June 9, 2009). Accordingly, claims of fiduciary duties are not only unnecessary for Plaintiffs to fully pursue their rights, but are also an incorrect reflection of the law which confines Plaintiffs to a claim for a breach of duty of good faith and fair dealing only. As such, any reference to a fiduciary duty is superfluous, confusing, and must be stricken from the Complaint.

**B.    Plaintiffs' Claims of Bad Faith**

Counts I and II of the Complaint assert a cause of action for Defendant's alleged failure to comply with the duties of good faith and fair dealing in handling Plaintiffs' insurance claims. In the instant motion, Defendant argues that those claims should be dismissed.

**1.    Legal Standard**

Pennsylvania law allows an insured party to receive damages and other relief if the insurer acted in bad faith toward the insured party.[1] 42 Pa.C.S.A. § 8371. Generally, to prevail on a bad faith claim, a plaintiff must establish that: "(1) the insurer did not have a reasonable basis for denying coverage and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage." *Post v. St. Paul Travelers Ins. Co.*, 609 F.Supp.2d 382, 385 (E.D.Pa.2009) (citing *Greene v. United Servs. Auto. Ass'n*, 936 A.3d 1178, 1189 (Pa. Super.2007)).

In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating a claim. *See Terletsky*, 649

---

[1] There are two separate "bad faith" claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith claim under 42 Pa. Cons. Stat. Ann. Section 8371. *See Birth Ctr. v. St. Paul Cos., Inc*., 567 Pa. 386, 409, 787 A.2d 376, 390 (2001). Plaintiffs bring both.

A.2d at 688–89. "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. 2006) (citing *Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. 2000)). Mere negligence or bad judgment does not constitute bad faith. *Condio*, 899 A.2d at 1143. However, recklessness on the part of the insurer can support a finding of bad faith. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994). A plaintiff may also make a claim for bad faith stemming from an insurer's investigative practices, such as a "lack of a good faith investigation into facts, and failure to communicate with the claimant." *Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1232 (Pa.Super.1994) (citation omitted).

### 2.    Analysis

After considering Plaintiffs' allegations, accepting as true all well-pled facts, and separating the factual and legal elements of Plaintiffs' claims, I find that Plaintiffs fail to state a bad faith claim.

First, Plaintiffs allege that Defendant "fail[ed] to communicate" (Doc. 1-1, ¶ 60(h)) and "ignored communication requests" from Plaintiffs. (*Id.* at ¶ 60(j)). However, a careful examination of the Complaint reveals that these allegations are unsupported.

In February 2016, Plaintiffs provided Defendant with a damages package. Defendant's first settlement offer came only three-and-a-half moths later, on May 26, 2016. During this time, despite Plaintiffs' claims of lack of communication, Defendant:

(1)    on March 9, 2016, contacted Plaintiffs "via its adjuster, Holly Layman-Tyler [who] advised Plaintiff that she would be submitting her final report to management with her recommendations by the end of the weekend" (Doc. 1-1, Compl., at ¶ 29);

(2)    on April 18, 2016, requested a blanket authorization to "obtain certain investigative records and requested a copy of all records pursuant to said authorization" (*Id.* at ¶ 32);

(3)    on April 20, 2016, contacted Plaintiffs via its adjuster who advised of the

status of the review (*Id.* at ¶ 34); and

(4)    on May 24, 2016, "provided Plaintiff with a copy of the investigative file that Plaintiff had authorized Defendant to obtain" (*Id.* at ¶ 37).

Moreover, after the first settlement offer was rejected by Plaintiffs, Defendant, within only one week, proposed a new, higher, settlement offer. (*Id.* at ¶ 41). Although Defendant often did not *immediately* respond to Plaintiffs' communications, an allegation of "failure" to communicate is inconsistent with reality. Defendant's communications may be described as tardy, but I cannot impute bad faith or even unreasonable delay, especially in light of the fact that Defendant made a settlement offer within three-and-a-half months after receiving Plaintiffs' estimate of damages. Although "[d]elay is a relevant factor in determining whether bad faith had occurred," *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa.1999), I am unable to find precedent supporting the proposition that an insurance company's investigation of a claim lasting three-and-a-half months is unreasonably lengthy. *See, e.g., Robbins v. Metropolitan Life Ins. Co. of Connecticut*, 2008 WL 5412087, at * 8 (E.D.Pa. Dec.29, 2008) (holding that a four-month delay, by itself, was not so unreasonable as to indicate bad faith because "while it might have been possible to conduct the investigation and evaluation more quickly, four months is not an unreasonable amount of time for such an investigation"); *Williams v. Hartford Cas. Ins. Co.*, 83 F.Supp.2d 567, 572 (E.D.Pa.2000) (holding that even though an insurance company could have completed claim investigation more quickly, a fifteen-month delay, on its own, was not evidence of presence of bad faith). *See also Kosierowski*, 51 F.Supp.2d at 588–589; 590 ("[L]egitimate, if frustrating delays that are an ordinary part of legal and insurance work" do not constitute bad faith.).

There is also no evidence that Defendant failed to objectively and fairly evaluate Plaintiffs' claims, or that the settlement offer was so inadequate as to constitute bad faith. "[E]ven if the offer was facially unreasonable, that does not prove that [the insurer] acted in bad faith; rather, it might have negligently failed to investigate and evaluate [the] claim," *Sypeck v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 2239730, at *3 (M.D. Pa. June 15,

2012), and "mere negligence or bad judgment is not bad faith." *Northwestern Mutual Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005) (citation omitted). Further, "[n]egotiating by offering a figure at the low end of the settlement range does not necessarily constitute bad faith, particularly when the valuation of the injuries and damages of a claim is difficult." *Williams*, 83 F.Supp.2d at 576; *see also Kosierowski*, 51 F.Supp.2d at 592 ("Even cases . . . that acknowledge that a refusal to settle may constitute bad faith so hold only when the amount in question is clearly known by the insurer.") (citing *Klinger*, 115 F.3d at 233); *Terletsky*, 649 A.2d at 688–89 (holding that a defendant's low settlement offers were not evidence of bad faith because many factors, including medical ambiguities, injury severity, car damage, and liabilities of each driver, were used to determine settlement values and were thus reasonably based).

In the instant case, Defendant's alleged unreasonable valuation of Plaintiffs injuries is insufficient to constitute bad faith. Analogously to *Yohn v. Nationwide Ins. Co.*, 2013 WL 2470963 (M.D. Pa. June 7, 2013), where the court granted a motion to dismiss a bad faith claim:

> [Plaintiff] does not allege facts to support the value of his claim. For example . . . he does not allege the amount of earnings he has lost or will likely lose in the future, and he has not alleged any relevant facts concerning his earning capacity, such as his age, education, employment status, or how his injury has affected his ability to work. Similarly, although [Plaintiff] alleges that he has incurred medical expenses, he does not allege anything about the amount of those expenses or what medical treatment he received or will likely need in the future.

*Yohn*, 2013 WL 2470963, at *7. Plaintiffs merely assert that the settlement offers were unreasonable because: (a) the first settlement offer was only "$225,000, even though Defendant . . . has a policy limit of $1,000,000"; and (b) "the verdict potential of Plaintiff's damages far exceed[s] Defendant's policy limits." (Doc. 1-1, at ¶ 40). I disagree.

First, given that the damages package provided by Plaintiffs included a "medical lien and wage loss documentation in an amount in excess of $122,000," (*Id.*) a settlement offer that is higher by nearly $100,000 than the proposed damages package is not unreasonable, and "bad faith is not present merely because an insurer makes a low but reasonable

estimate of an insured's damages." *Smith v. State Farm Mutual Auto. Ins. Co.*, 2012 WL 5910532 at *2 (3d Cir. Nov. 27, 2012) (quoting *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct. 2009)). Secondly, Plaintiffs' assertion of a verdict potential is an *opinion* as to the value of their claim, not an objective measure of it, and because such an assertion is nothing more than a legal conclusion, it must be disregarded. Simply put, Plaintiffs' subjective belief as to the verdict potential of their claims cannot constitute evidence of bad faith on the part of Defendant because Defendant's subjective belief as to the value of the claim may reasonably, and permissibly, differ.

There is also no evidence that the alleged four medical examination requests amounted to bad faith. "While an insurer has a duty to accord the interests of its insured the same consideration it gives its own interests, 'an insurer is not bound to submerge its own interest in order that the insured's interests may be made paramount, and an insurer does not act in bad faith by investigating and litigating legitimate issues of coverage.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir.2012) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 368 (3d Cir.2004)). Moreover, under Pennsylvania law, investigative efforts, such as requests for medical examinations, are not unreasonable when the claim's value is ambiguous. *Williams v. Hartford Cas. Ins. Co.*, 83 F.Supp.2d 567, 572 (E.D.Pa.2000). As held in *Williams*, "while liability was clear, the value of plaintiff's claim was not, and therefore [the defendant] acted reasonably in undertaking an investigation of the claim." *Id.*; *see also Hrabak v. Hummel*, 55 F.Supp. 775, 779 (E.D.Pa.1943) ("[P]ast earnings are only one of the factors to be taken into consideration ... other factors are a plaintiff's age, condition, station in life, occupation, health and surroundings.").

As the Complaint acknowledges, Defendant asserted several reasons for the need for additional examinations, such Plaintiff Thomas Meyers' "significant medical history," "a delay in reporting the accident," "only minor property damage." (Doc. 1-1, at ¶ 45). Because these factors may require a fact-specific calculation and an investigation of different variables, I do not find them unreasonable. *See Williams*, 83 F.Supp.2d at 574 (noting that "if there is a reasonable basis for delaying resolution of a claim, even if it is clear that the

13

insurer did not rely on that reason, there cannot as a matter of law, be bad faith"). More importantly, Plaintiffs have not pointed to any evidence that the requested medical examinations were unnecessary for a complete investigation, and have not put forward any specific facts suggesting that the requests for examinations were made in bad faith.

Instead, the Complaint contains "bare-bones" conclusory allegations which are not sufficient to state a bad faith claim. For instance, an allegation that the claim was not timely paid and investigated (Doc. 1-1, at ¶ 60 (a, b)), in and of itself does not prove bad faith until there are sufficient allegations of untimeliness. Whether something is untimely (or, more precisely, unreasonably untimely) may be an element of a bad faith claim only to the extent that it itself has sufficient support; otherwise, an allegation that a claim was not timely paid and investigated is a legal conclusion which a court must disregard at a motion to dismiss stage. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, *Iqbal*, 556 U.S. at 664, 129 S. Ct. 1937. Similarly, Plaintiffs allege that Defendant "refus[ed] to attempt in good faith to effectuate prompt, fair and equitable settlement," (Doc. 1-1, at ¶ 60(r)), "fail[ed] to act in good faith and with fair dealing towards its insured," (*Id.* at ¶ 60(w)), and "refus[ed] to negotiate with Plaintiff in good faith." (*Id.* at ¶ 60 (cc)). In other words, Plaintiffs claim that Defendant acted in bad faith because it failed or refused to act in good faith. Such allegations are not only conclusory, but are also circular and prove nothing.

Accordingly, because Plaintiffs provide no factual support from which I can conclude that Defendant's actions in investigating and evaluating Plaintiffs' claims were unreasonable, and because I find that Plaintiffs have failed to meet the pleading standards required under *Iqbal* and *Twombly*, their bad faith claims will be dismissed.

## C.   Plaintiff Colleen Meyers' Loss of Consortium Claim

Finally, Defendant argues that a claim for loss of consortium may not be maintained in a breach of contract action. Under Pennsylvania law, loss of consortium, as a derivative claim, can be recovered by a wife only when the defendant is liable to her spouse. *See, e.g., Murray v. Commercial Union Ins. Co.*,782 F.2d 432, 437-38 (3d Cir.1986); *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151, 1155 (1984); *Little v. Jarvis*, 219

Pa.Super. 156, 280 A.2d 617, 620 (1971). Here, Defendant may be liable for a breach of contract. Consequently, I find that it is inappropriate to dismiss Plaintiffs' loss of consortium claim at this early stage in the litigation. *See Costello v. Government Employees Ins. Co.*, 2010 WL 1254273, at *9 (M.D. Pa. Mar.25, 2010) (refusing to dismiss loss of consortium claim made pursuant to an uninsured motorist claim).

**D.     Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Here, because Plaintiffs may be able to put forward additional facts sufficient to state a bad faith claim under Pennsylvania law, I will grant leave to amend the Complaint.

## IV. Conclusion

For the above-stated reasons, the motion to dismiss will be granted in part and denied in part. All references to fiduciary duty are to be stricken from the Complaint. Plaintiffs' bad faith claims will be dismissed without prejudice. Plaintiffs, however, will be permitted to proceed on their derivative loss of consortium claim.

An appropriate order follows.


January 27, 2017                          /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                                     United States District Judge