# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS and COLLEEN MEYERS,

    Plaintiffs,

    v.

PROTECTIVE INSURANCE COMPANY,

    Defendant.

NO. 3:16-CV-01821

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss Claims of Bad Faith in the Amended Complaint (Doc. 19) filed by Defendant Protective Insurance Company ("Defendant"). Plaintiff Thomas Meyers ("Plaintiff")[1] contends, *inter alia*, that Defendant failed to comply with its statutory and common law duties of good faith and fair dealing in handling his uninsured motorist claim. I previously dismissed Plaintiff's bad faith claims, but Plaintiff was permitted to amend those claims to sufficiently allege that Defendant acted in bad faith in investigating and evaluating his uninsured motorist claim. Plaintiff timely filed the Amended Complaint, and Defendant again seeks dismissal of the statutory and common law bad faith claims. Because Plaintiff now pleads plausible bad faith claims, the motion to dismiss will be denied.

### I. Background

The facts as alleged in the Amended Complaint are as follows:

On January 21, 2014, Plaintiff sustained serious injuries after he was struck by a hit-and-run vehicle while delivering boxes for his employer, KM Michaels, Inc. (*See* Doc. 18, ¶¶ 14-15). At that time, KM Michaels, Inc. had an automobile insurance policy issued by Defendant, which covered Plaintiff as an "insured" under the policy. (*See id*. at ¶¶ 6, 11).

On or about April 23, 2014, Plaintiff provided Defendant with notice of his uninsured motorist

---

[1] Plaintiff's wife Colleen Meyers is also a party to this litigation asserting a derivative claim for loss of consortium. Where appropriate, the Meyers are collectively referred to as "Plaintiffs".

claim. (*See id*. at ¶ 24). The same day, Plaintiff supplied Defendant with a copy of the police report and requested a copy of the property damage photos that Defendant indicated were in its file. (*See id*. at ¶ 25). On May 28, 2014, Plaintiff provided Defendant with treatment information and medical records. (*See id*. at ¶ 26). At that time, Plaintiff also gave Defendant a copy of a decision finding Plaintiff was entitled to workers' compensation. (*See id*. at ¶ 27). Plaintiff provided updated treatment records to Defendant on August 18, 2014. (*See id*. at ¶ 28).

On May 29, 2015, Plaintiff, at the request of Defendant, underwent an independent medical examination by an orthopedic surgeon. (*See id*. at ¶ 29). That physician characterized Plaintiff's condition as "guarded" and attributed Plaintiff's injuries to the hit-and-run accident. (*See id*. at ¶¶ 30-31).

Plaintiff, on or about January 4, 2016, notified Defendant that he had been unable to identify the driver of the vehicle that struck him. (*See id*. at ¶ 32). On or about February 1, 2016, Plaintiff provided Defendant with a "specific and detailed liability and damages package, including hundreds of pages of Plaintiff's medical records, which went without a response." (*Id*. at ¶ 33). On March 9, 2016, Plaintiff asked Defendant to advise him of the status of the review of his claim, but Defendant failed to do so. (*See id*. at ¶ 34). Rather, Defendant's adjuster responded to Plaintiff that her final report would be submitted to management over the weekend and she would advise Plaintiff of Defendant's position as soon as possible. (*See id*. at ¶ 35). Defendant's adjuster did not advise Plaintiff of the status of the review as promised. (*See id*. at ¶ 36). Plaintiff again requested Defendant provide him a report on the status of his claim evaluation on March 31, 2016, but that request was ignored. (*See id*. at ¶¶ 37-38). On April 18, 2016, Plaintiff provided Defendant with a blanket authorization to obtain certain investigative records. (*See id*. at ¶ 39).

Plaintiff wrote to Defendant on April 20, 2016 as follow up to an earlier email and multiple voice messages regarding the status of his claim. (*See id*. at ¶ 40). Defendant's adjuster responded that the review meeting was not yet on her calendar. (*See id*. at ¶ 41). Despite subsequently informing Plaintiff that she would find out when the claim would be reviewed, the adjuster failed to provide this information to Defendant. (*See id*. at ¶¶ 42-44).

Plaintiff left several voice messages for Defendant's adjuster during the week of May 8, 2016

requesting an update on the status of Defendant's investigation, to which Defendant's adjuster responded on May 18, 2016 that she still did not have a calendar date for review of Plaintiff's claim. (*See id*. at ¶¶ 45-46). After multiple requests, Defendant finally provided Plaintiff with a copy of its investigative file on May 24, 2016. (*See id*. at ¶ 48). Plaintiff contacted the adjuster's supervisor the following day regarding Defendant's failure to provide a settlement offer or otherwise communicate regarding the status of its investigation. (*See id*. at ¶ 49).

On May 26, 2016, Defendant made its first settlement offer in the amount of $225,000.00. (*See id*. at ¶ 50). At the time the offer was made, Defendant possessed medical lien and wage loss documentation in an amount in excess of $122,000.00. (*See id*.). Defendant was also aware at that time that Plaintiff's medical and wage loss liens were rapidly increasing as Plaintiff was still unable to work and was undergoing medical treatment. (*See id*.). The following week, Defendant increased its settlement offer and retained counsel to represent its interests in this matter. (*See id*. at ¶¶ 51-52). After counsel was retained, Defendant over the next month requested three (3) medical evaluations of Plaintiff, including two with orthopedic physicians. (*See id*. at ¶¶ 54, 58-60).

On June 9, 2016, Plaintiff advised Defendant that he would be willing to settle his claim within the policy limits. (*See id*. at ¶ 53). A week later, Defendant wrote to Plaintiff setting forth falsities designed to devalue Plaintiff's claim, including that he delayed in reporting the accident, that Plaintiff had a "significant medical history", that there was only "minor property damage", and that there were "other relevant factors" that Defendant failed to identify. (*See id*. at ¶¶ 55). Plaintiff responded to Defendant the next day to rebut the inaccuracies set forth in Defendant's prior correspondence and to request a more reasonable offer in light of Plaintiff's injuries. (*See id*. at ¶¶ 56-57).

Based on the foregoing, Plaintiffs filed this action against Defendant in the Court of Common Pleas of Lackawanna County, Pennsylvania on July 25, 2016. (*See* Doc. 1, Ex. "A"). After removing the action to this Court, (*see* Doc. 1, *generally*), Defendant filed a motion for partial dismissal of Plaintiffs' Complaint. (*See* Doc. 3, *generally*).

Defendant's motion to dismiss was granted in part and denied in part, and Plaintiff was granted leave to amend his bad faith claims. (*See* Docs. 16-17, *generally*). In dismissing Plaintiff's

bad faith claims without prejudice, I found that Plaintiff failed to sufficiently allege facts demonstrating bad faith regarding Defendant's failure to communicate with Plaintiff and/or failure to objectively and fairly evaluate Plaintiff's uninsured motorist claim. (*See* Doc. 16, 10-14). I also noted that the Complaint contained "bare-bones" conclusory allegations which were insufficient to state bad faith claims. (*See id*. at 14). Accordingly, the bad faith claims were dismissed, but Plaintiff was granted the opportunity to file an amended complaint to state additional facts to support those claims. (*See id*. at 15).

In accordance with my January 27, 2017 Memorandum and Order, Plaintiffs timely filed an Amended Complaint. (*See* Docs. 16-18, *generally*). The Amended Complaint sets forth claims for breach of contract (including common law bad faith), statutory bad faith, and a derivative claim for loss of consortium. (*See* Doc. 18, *generally*). Defendant filed the instant motion requesting dismissal of Plaintiff's bad faith claims on March 10, 2017. (*See* Doc. 19, *generally*). Defendant's motion to dismiss is now fully briefed and ripe for disposition.

## II. Discussion

**A. Legal Standard.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the

4

plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.     Plaintiff's Bad Faith Claims.**

Pennsylvania law allows an insured party to receive damages and other relief if the insurer acted in bad faith toward the insured party. 42 Pa. C. S. A. § 8371. Generally, to prevail on a bad faith claim, a plaintiff must establish that: "(1) the insurer did not have a reasonable basis for denying coverage and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage." *Post v. St. Paul Travelers Ins. Co.*, 609 F. Supp. 2d 382, 385 (E.D. Pa. 2009) (citing *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1189 (Pa. Super. Ct. 2007)); *see also Rancosky v. Washington Nat'l Ins. Co.*, - - - A.3d - - -, 2017 WL 4296351, at *1 (Pa. Sept. 28, 2017) (adopting two-part test). A plaintiff may also make a claim for bad faith stemming from an insurer's investigative practices, such as a "lack of a good faith investigation into facts, and failure to communicate with the claimant." *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994) (citation omitted).

In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating a claim. *See Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680, 688-89 (Pa. Super. Ct. 1994). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) (citing *Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000)). Mere negligence or bad judgment does not constitute bad faith. *Condio*, 899 A.2d at 1143. However, recklessness on the part of the insurer can support a finding of bad faith. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994).

Defendant, relying on my prior ruling dismissing Plaintiff's bad faith claims without prejudice, argues that the Amended Complaint fails to state either a common law or statutory bad faith cause of action. (*See* Doc. 23, 14-20). Defendant contends that Plaintiff essentially re-filed the same factual averments in the Amended Complaint that were previously deemed insufficient. (*See id*. at 14). As a result, Defendant asserts that the Amended Complaint suffers from the same defects as the original Complaint, specifically, that the uninsured motorist claim was not denied, Defendant communicated with Plaintiff, Defendant investigated Plaintiff's claim, and Defendant made a timely

and reasonable settlement offer to Plaintiff. (*See id*. at 15-20). Defendant thus concludes that the Amended Complaint fails to state plausible bad faith claims. (*See id*. at 20). I disagree.

First, the Amended Complaint has replaced the "bare-bones" or boilerplate legal conclusions in the original Complaint with clear factual allegations that plausibly support a finding of bad faith. For example, whereas the original Complaint contained catch-all averments of failure to investigate, failure to communicate, and failure to evaluate, (*see* Doc. 1, Ex. "A", ¶ 60(b-c)), the Amended Complaint sets forth factual support pertaining to Defendant's alleged refusal to promptly communicate with Plaintiff, its repeated misrepresentations to Plaintiff, and its failure to comply with various insurance regulations. (*See* Doc. 18, ¶ 84). Thus, the pleadings in the cases cited by Defendant where motions to dismiss were granted when the allegations of bad faith contained nothing more than boilerplate conclusions of law, (*see* Doc. 23, 19-20), are distinguishable because Plaintiff in the Amended Complaint alleges specific and relevant facts to support a finding of bad faith. *See Davis v. Nationwide Mutual Ins. Co.*, 228 F. Supp. 3d 386, 389-90 & n.4 (E.D. Pa. 2017); *Vankirk v. State Farm Mutual Auto. Ins. Co.*, No. 15-199, 2015 WL 2185417, at *3 (W.D. Pa. May 11, 2015); *Padilla v. State Farm Mutual Auto. Ins. Co.*, 31 F. Supp. 3d 671, 676-77 (E.D. Pa. 2014); *Pauling v. State Farm Mutual Auto. Ins. Co.*, No. 13-1348, 2013 WL 5412079, at *3 n.4 (M.D. Pa. Sept. 26, 2013).

Second, in contrast to the original Complaint, the averments in the Amended Complaint provide ample factual support for the bad faith claims. With respect to the claimed lack of prompt communication with Defendant, Plaintiff pleads with specificity numerous instances where he contacted Defendant regarding the status of his uninsured motorist claim and his inquiries were either ignored or dealt with in a cursory, non-responsive manner. (*See* Doc. 18, ¶¶ 33-38, 40-48). These allegations pertaining to Defendant's failure to act promptly or otherwise respond sufficiently set forth plausible bad faith conduct. *Accord Scheirer v. Nationwide Ins. Co. of Am.*, No. 13-1397, 2015 WL 1013986, at *7-8 (M.D. Pa. Mar. 9, 2015) (denying motion for summary judgment where the court found that "disputes exist as to whether defendant conducted a prompt investigation of plaintiff's UM claim, as to whether defendant promptly evaluated and investigated plaintiff's UM claim, as to whether defendant failed to timely respond to plaintiff's demands, as to whether defendant failed to

7

promptly resolve plaintiff's claim within the $100,000 policy limits, as to whether defendant failed to act promptly upon communication regarding plaintiff's claim, as to whether defendant failed to have reasonable standards with respect to plaintiff's UM claim, and as to whether defendant failed to timely pay plaintiff's UM claim when it had all of the necessary information.").

Third, the Amended Complaint supplies additional facts regarding Defendant's bad faith in connection with its initial settlement offer by alleging that, at the time the offer was made, Defendant knew Plaintiff, nearly thirty (30) months after the hit-in-run accident, was still unable to work and undergoing continued medical treatment. (*See* Doc. 18, ¶¶ 50). As a result, Defendant knew that Plaintiff's medical and wage loss liens were rapidly increasing. (*See id*.). Viewing these facts in the light most favorable to Plaintiff, he alleges plausible bad faith claims. *See*, *e.g.*, *Hughes v. State Farm Mut. Auto. Ins. Co.*, No. 16-2240, 2017 WL 118362, at *3 (M.D. Pa. Jan. 12, 2017); *Padilla*, 31 F. Supp. 3d at 676; *see also Davis v. Nationwide Mut. Ins. Co.*, 228 F. Supp. 3d 386, 390 (E.D. Pa. 2017) ("bad faith claims have survived motions to dismiss when premised on allegations that an insurer failed to make a reasonable settlement offer in light of the insured's injuries and the facts underlying the insured's claim.")

Fourth, the Amended Complaint contains adequate allegations calling into question the sufficiency and timeliness of Defendant's investigation and evaluation of Plaintiff's uninsured motorist claim. (*See* Doc. 18, ¶¶ 32-60). In particular, despite repeated requests from Plaintiff to evaluate his claim and consider the claim for review, Defendant's adjuster seemingly ignored those requests and did not get the claim scheduled for review for over two (2) months. (*See id*. at ¶¶ 33-35, 41-43, 46). These allegations provide further factual support of plausible bad faith conduct. *See*, *e.g.*, *Padilla*, 31 F. Supp. 3d at 676 (finding the plaintiff stated a bad faith claim where, *inter alia*, "[e]ach request for an evaluation of her claim was met with further requests for information or was ignored"); *accord id*. at 676 n.10 ("discovery would be needed in order to determine whether the defendant acted in bad faith in handling the plaintiff's UIM claim."); *Scott v. GEICO Gen. Ins. Co.*, No. 11-1790, 2013 WL 3147637, at *5 (M.D. Pa. June 19, 2013) ("the level of complexity and what constitutes a reasonable period to investigate are questions of fact.")

Finally, where, as here, bad faith claims are based on "an entire course of alleged dilatory

conduct, rather than on a particular incident or denial of a claim, the finder of fact will have to consider the entire course of conduct in order to determine whether the Defendant's handling of [Plaintiff's uninsured motorist] claim was conducted in bad faith." *Barry v. Ohio Cas. Grp.*, No. 04-188, 2007 WL 128878, at *12 (W.D. Pa. Jan. 12, 2007); *accord Scott*, 2013 WL 3147637, at *5 (denying motion for summary judgment and stating that "a jury could find, by clear and convincing evidence, that the defendant's course of conduct did not rest on a reasonable basis and therefore constituted bad faith under 42 Pa. C.S.A. § 8371."). Looking at the Amended Complaint in its entirety and the allegations therein collectively, the averments of bad faith conduct are substantially more detailed than those set forth in the original Complaint and Plaintiff now plead plausible bad faith claims. (*Compare* Doc. 18, *generally*, *with* Doc. 1, Ex. "A", *generally*). "Indeed, the course of conduct outlined in the amended complaint far surpasses mere negligence and falls squarely within the definition of bad faith conduct." *Pauling*, 2013 WL 5412079, at *3. Altogether, Plaintiff's Amended Complaint presents plausible bad faith claims and is thus sufficient to withstand a motion to dismiss. *See*, *e.g.*, *Davis*, 228 F. Supp. 3d at 389 (citing *Padilla*, 31 F. Supp. 3d at 676 n.10 and noting case law "standing for the proposition that a motion to dismiss a fad faith claim should be denied when there is an inference of bad faith and discovery is necessary to uncover evidence confirming whether the insurer did in fact act in bad faith.").

### III. Conclusion

For the above stated reasons, Defendant's motion to dismiss Plaintiff's bad faith claims will be denied. Defendant will be directed to file an Answer to the Amended Complaint within twenty-one (21) days from the date of entry of the accompanying Order.

An appropriate order follows.

October 10, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

9